# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH VASATURO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Joseph Vasaturo ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Lowe's Companies, Inc. ("Lowe's" or "Defendant") for the manufacture, marketing, and sale of the Harbor Breeze Kingsbury Ceiling Fan (the "Product") identified below. Plaintiff makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action against Defendant Lowe's Companies, Inc. for the manufacture and sale of Harbor Breeze Kingsbury Ceiling Fans, all of which suffered from an identical defect in design. Specifically, the heavy light globe has a tendency to fall from its housing, posing an impact and laceration injury hazard. A ceiling fan that poses such a hazard is extraordinarily dangerous considering the weight of the light globe and the fact that it is made of glass prone to shatter. This defect rendered the Product unsuitable for its principal and intended purpose. Further, had Plaintiff been aware of this serious defect, he would not have purchased the Product, or would have paid significantly less for it.

2. Plaintiff brings his claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product for (1) violation of New York General Business Law § 349; (2) violation of New York General Business Law § 350; (3) fraud; (4) unjust enrichment; (5) breach of implied warranty; and (6) violations of the Magnuson-Moss Warranty Act.

## **PARTIES**

3. Plaintiff Joseph Vasaturo is, and at all times relevant to this action has been, a resident of Pine Bush, New York and a domiciliary of New York. In 2017, Mr. Vasaturo purchased two Harbor Breeze Kingsbury Ceiling Fans from a Lowe's store located in New York. Mr. Vasaturo purchased the Product because he believed they were fit for use as ceiling fans. However, the Products Mr. Vasaturo purchased were not fit for use as ceiling fans due to the Product's malfunctioning light globe. Mr. Vasaturo would not have purchased the Product or would have paid significantly less for the Product had he known that the Product was unfit to perform its intended purpose.

4. The light globe on the Product that Mr. Vasaturo purchased malfunctioned shortly after he purchased them. Mr. Vasaturo stopped using the Products because the light globe would not stay on and wobbled when he used the Product. Mr. Vasaturo stopped using the Product long before he ever contemplated litigation.

5. Mr. Vasaturo reviewed the Product's packaging prior to purchase. Defendant disclosed on the packaging that the Product was a ceilings fans and described features typical of ceiling fans but did not disclose the defect. Had there been a disclosure, Mr. Vasaturo would not have purchased the Product because the defect would have been material to him, or at the very

least, he would have purchased the Product at a substantially reduced price. Mr. Vasaturo relied on the packaging in making his purchase decision.

6. Defendant Lowe's Companies, Inc. is a North Carolina corporation with its principal place of business at 1000 Lowe's Boulevard Mooresville, North Carolina 28117. Defendant markets and distributes the Product throughout the United States, and the Product is manufactured exclusively for Defendant's stores. Defendant sells its products directly to consumers in Lowe's stores and on Lowe's website.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff Vasature purchased his Product in this District.

## COMMON FACTUAL ALLEGATIONS

**I. The Light Globe Defect**

10. Defendant Lowe's is a retail store franchise that owns and operates over 2200 home improvement stores nationwide. Among the various items sold by Defendant is the Harbor Breeze Kingsbury Ceiling Fan, which is the product at issue here.

11. The Product is sold exclusively by Defendant.

12. The Product was made with a defective light globe, causing the light globe to often fall out of its housing, posing an impact and laceration hazard (hereinafter, the "Product Defect" or "Light Globe Defect"). The Product Defect was substantially likely to materialize during the useful life of the Product.

13. With 280,000 units sold at approximately $230 each, Lowe's profited enormously from its failure to disclose the Product Defect sooner.

14. The Light Globe Defect at issue here involves a critical safety-related component of the Product, and it was unsafe to operate the Product with the defective light globe. Defendant had exclusive knowledge of the defect, which was not known to Plaintiff or class members.

15. Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, by displaying the Product and describing its features, the product packaging implied that the Product was suitable for use as a ceiling fan, without disclosing that they had a critical safety-related defect that could result in harm to users of the Product.

## II. Defendant's Sham Recall

16. In October of 2020, Lowe's issued a purported recall of the Product.

17. The recall was due to a serious injury hazard associated with the Product. Specifically, Lowe's admitted that its Product had a defect in design and materials that caused the light globe to fall from its housing.

18. Lowe's sold over 280,000 units of the Product in the United States.

19. The entirety of the recall remedy available to consumers was the ability to contact the Product manufacturer and request a new instruction manual. No financial compensation was offered to consumers.

20. The recall allowed Lowe's to *say* it was doing right by its customers, but in fact the recall protected Lowe's profits by suppressing returns:

  (a) The recall remedy was grossly insufficient because it in no way compensated consumers for the purchase of a dangerous and defective product.

  (b) Defendant's website contained a link to recall information, but the link was in small, inconspicuous text buried among a lengthy list of other links, and class members would not have a reason to follow the link if they did not already know about the recall in the first place.

  (c) Lowe's did not offer refunds in lieu of a replacement instruction manual.

## III. Lowe's Pre-Sale Knowledge Of The Defect

### A. Lowe's Received Complaints Directly From Customers And Through The CPSC

21. Years before issuing the recall, Lowe's received reports of light globes falling from the housing on their Harbor Breeze line of ceiling fans.

22. The United States Consumer Products Safety Commission ("CPSC") operates a website where consumers can post complaints about unsafe products and provide details about any incidents they experienced.

23. Online safety reports to the CPSC show that Lowe's knew or should have known of the defect since at least 2015, yet it continued to sell the defective products anyway.

24. Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer and retailers. As set forth in more detail below, the CPSC website indicates that all safety complaints referenced herein were sent to Defendant, including the dates on which they were sent. Defendant also monitors safety complaints from the CPSC, and thus Defendant would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

25. For instance, on July 27, 2015, a consumer submitted a report to the CPSC concerning a Harbor Breeze Ceiling fan. The complaint stated: "Glass bowl of the ceiling fan fell down and shattered. Nearly injured my daughter who was inches away." The consumer stated that they independently contacted and alerted the manufacturer about this defect. The CPSC also sent this complaint to Lowe's on August 4, 2015. Hence, Lowe's was alerted twice about this incident—once by the consumer directly and then again later by the CPSC.

26. In total, Defendant has received 76 reports of the light globe falling, which includes four reports of laceration injuries.[1]

27. Every time the CPSC's website describes a consumer complaint, the website also discloses the date when CPSC sent that complaint to the manufacturer. This is separate from the portion of the safety complaint where the consumer states whether he or she independently contacted the manufacturer. As alleged above, the above-referenced complaints were sent to Defendant by the CPSC shortly after being submitted to the CPSC.

---

[1] CPSC, *Harbor Breeze Kingsbury Ceiling Fans Recalled by HKC-US Due to Impact and Laceration Injury Hazards; Sold Exclusively at Lowe's Stores*, https://cpsc.gov/Recalls/2021/Harbor-Breeze-Kingsbury-Ceiling-Fans-Recalled-by-HKC-US-Due-to-Impact-and-Laceration-Injury-Hazards-Sold-Exclusively-at-Lowes-Stores.

28. For each of the following reasons, Lowe's management knew or should have known about the complaints referenced above as soon as they began appearing on the CPSC website in 2015:

    (a) First, as noted above, Lowe's was repeatedly contacted directly by consumers and by the CPSC about the same light globe problem.

    (b) Second, the CPSC website is a government-run repository for complaints about safety-related defects, and many of Lowe's' products appear on the website. The CPSC website can provide businesses with early warnings of product defects, and monitoring reports is easy because users can search for reports by company names. Hence, since at least 2011, it required negligible effort for Lowe's management and other personnel to visit the CPSC website, type "Harbor Breeze" in the search field, and view a list of reports of safety incidents related to Harbor Breeze ceiling fan products, including reports about the Product Defect at issue here.

    (c) Third, Lowe's knows about the CPSC's website because Lowe's states on its own website that information about its products is available on the CPSC's website.

29. Lowe's also would have had notice of the Product Defect as a result of product returns.

30. In short, by November 2016 at the latest, information from customer returns, complaints directly to Lowe's, and information obtained from the CPSC, whether alone or in the

7

aggregate, would have put Lowe's on notice of the defect. Nonetheless, Lowe's failed to recall the Product until October 2020, putting innumerable consumers at risk in the meantime.

## CLASS REPRESENTATION ALLEGATIONS

31. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

32. Plaintiff also seeks to represent a subclass of all Class Members who purchased the Product in the State of New York (the "New York Subclass") (collectively with the Class, the "Classes").

33. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

34. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively). However, given the size of the recall and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

35. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a) whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

    (b) whether Defendant's conduct was unfair and/or deceptive;

(c) whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes;

(d) whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

36. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the New York General Business Law § 349 and § 350.

37. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Product, and Plaintiff sustained damages from Defendant's wrongful conduct.

38. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the unsatisfactory nature of Defendant's recall.

40. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

# COUNT I
## Violation Of New York General Business Law § 349

41. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

42. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

43. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

44. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

45. Plaintiff and members of the New York Subclass are consumers who purchased the Product from Defendant for their personal use.

46. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Product (i) would not contain a dangerous defect and (ii) are generally recognized as safe for use. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product.

47. The foregoing deceptive acts and practices were directed at consumers.

48. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Product to induce consumers to purchase the same.

49. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

50. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and used Defendant's products.

51. As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect; (b) they paid a premium price in the amount of the full purchase price of the Product; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

52. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York General Business Law § 350

53. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

55. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

56. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

57. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

58. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed towards consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Product.

59. Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

60. Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

61. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

62. As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages due to said violations because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect and are not safe for use; (b) they paid a premium price in the amount of the full purchase price of the Products; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

63. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
**Fraudulent Omission**

64. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

66. This claim is based on fraudulent omissions concerning the safety of consumers who use the Product. As discussed above, Defendant failed to disclose that the Product had a dangerous defect.

67. The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide home improvement retailer who knew of reports of the Product's defective and dangerous nature. Nonetheless, Defendant continued to sell its worthless ceiling fans to unsuspecting consumers.

68. The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Classes to purchase the Product.

69. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT IV
**(Unjust Enrichment)**

70. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

72. Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Product.

73. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was unfit for use as a ceiling fan. These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Product if the true facts were known.

74. Retention of those moneys also is unjust and inequitable because, as alleged above, Lowe's commenced an ineffective recall that did not permit refunds as a remedy, thereby protecting profits Lowe's collected from selling the defective products.

75. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT V
### Breach of Implied Warranty

76. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

78. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product (i) would not contain a safety-related defect and (ii) was generally safe for consumer use.

79. Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract description, the Product was not of fair or average quality within the description, and the Product

was unfit for its intended and ordinary purpose because the Product manufactured by Defendants was defective in that it contained the Light Globe Defect, and as such is not generally recognized as safe for consumer use. As a result, Plaintiff and Class and Subclass Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

80. Plaintiff and Class and Subclass Members purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

81. The Product was not altered by Plaintiff or Class and Subclass Members.

82. The Product was defective when it left the exclusive control of Defendant.

83. Defendant knew that the Product would be purchased and used without additional testing by Plaintiff and Class and Subclass Members.

84. The Product was defectively manufactured and unfit for its intended purpose, and Plaintiff and Class and Subclass Members did not receive the goods as warranted.

85. Defendant was in vertical privity with Plaintiff and Class and Subclass Members because it sells its products directly to consumers in Lowe's stores and on the Lowe's website.

86. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class and Subclass Members have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product contained the Light Globe Defect, making it unsafe for consumer use; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

### COUNT VI
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

87. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

88. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

89. The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

90. Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

91. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

92. In connection with the marketing and sale of the Product, Defendant impliedly warranted that the Product was fit for use as ceiling fans. The Product was not fit for use as a ceiling fan due to the defect described in the allegations above.

93. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass Members.

94. Plaintiffs and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product if they knew the truth about the defective nature of the Product.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and

Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass Members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief;

(h) For an order awarding Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: December 23, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Max S. Roberts_
Max S. Roberts

Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com

*Counsel for Plaintiff*